**UNITED STATES and David J. Feddor, Revenue Agent, Internal Revenue Service, Petitioner-Appellant,**

v.

**J. Richard DEMA, Respondent-Appellee.**

No. 75–1894.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1976.
Decided Oct. 2, 1976.*

---

**6.** We do not reach this issue in view of the resolution of the question concerning appealability of class actions.

* This appeal was originally decided by unreported order on October 2, 1976. See Circuit Rule 35. The panel has subsequently decided to issue the decision as an opinion.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., Scott P. Crampton, Asst. Atty. Gen., Francis J. Gould, Atty., Tax Div., Dept. of Justice, Washington, D. C., for petitioner-appellant.

Sheldon R. Waxman, Chicago, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, MARKEY, Judge,** and GRANT, Senior District Judge.***

GRANT, Senior District Judge.

This is an appeal from an order of the district court permanently restraining the Internal Revenue Service from issuing any subpoenas or requesting any books or records of J. Richard Dema (the appellee herein), Sally A. Dema, his wife, or Tabcor, Inc., a subchapter S corporation of which appellee was president, for the years 1972 and prior thereto. The relevant facts of the case are as follows: The government filed a petition pursuant to §§ 7402(b) and 7604(a) of the Internal Revenue Code of 1954, seeking to enforce IRS summonses. The summonses, issued by Revenue Agent David J. Feddor, sought information for the purpose of ascertaining the correct tax liability of appellee and his wife for the years 1971 and 1972, and of Tabcor, Inc., for the years 1971, 1972, and 1973. Appellee refused to comply with the summonses and asked that they be quashed. After several hearings, the district court ordered appellee to produce certain corporate records, but quashed the summons for his personal records upon being advised by the government that such information was not required. The district court, on being advised that the corporate records had been produced as ordered, dismissed the action without prejudice. On the same day that the action was dismissed, however, a notice of deficiency with respect to appellee's 1971 income tax liability was mailed. Appellee thereupon filed a motion for an order from the court requiring Agent Feddor to show cause why he should not be held in contempt of court for violating the court's previous order quashing the summons on personal records, and for an order directing withdrawal of the notice of deficiency. The government responded, alleging that appellee was seeking injunctive relief which was proscribed by the provisions of the Internal Revenue Code. A hearing on the matter was held on 20 June 1975. After stating that the Service's action "borders on harassment," the district court entered an order permanently restraining the IRS from issuing any subpoenas or requesting any books or records of appellee, his wife, and Tabcor for the years 1972 and prior thereto. The court also suppressed any existing subpoenas or requests for those years. Thereupon, the action was dismissed with prejudice. This appeal followed.

Appellant's primary contention in this appeal is that § 7421(a) of the Internal Revenue Code of 1954 prohibits all suits seeking to restrain the assessment or collection of any tax. This prohibition, it is argued, reaches not only those actions which seek to restrain the assessment or collection acts themselves, but extends as well to all suits which seek to restrain any and all acts necessary or incident to the assessment or collection of taxes. Therefore, appellant maintains that the order of the district court, which precludes the IRS from carrying out investigations leading to the assessment and collection of taxes, contravenes the clear mandate of § 7421(a). In this regard, appellant claims that appellee presented no evidence, and thus did not establish the two conditions—(1) that there are no circumstances under which the government could ultimately prevail, and (2) that equity jurisdiction exists—which must be shown if the bar of § 7421(a) is to be avoided. *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). For these reasons, appellant urges this Court to remand this case to the district court with directions to dissolve the restraining order and dismiss the action.

In response, appellee argues that in an IRS enforcement proceeding where the trial court has determined that there has been harassment, § 7421(a) is not applicable to the entry of an order prohibiting the IRS

** Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation.

*** Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

from requesting records that it has already, in fact, seen. In this respect, appellee says that the court below acted well within its inherent equity powers in issuing the relief granted. Even if this Court should determine that § 7421(a) is found to be applicable to the case at bar, however, appellee asserts that he has met the requirements for injunctive relief by proving to the trial court's satisfaction that the government could not ultimately prevail and additionally that he would suffer irreparable harm unless he received equitable relief. Finally, appellee contends that the restraining order entered by the district court is specific in its terms, is fully supported by the evidence; and, therefore, the government's suggestion that the court's order of 20 June 1975 is invalid for lack of findings therein is without merit. In support of this contention, appellee submits that, because of the trial judge's extensive remarks which outlined his reasons for issuing the restraining order, there is no need for this Court to conjecture as to what were the reasons for the entry of the order. For the foregoing reasons, appellee requests that the lower court's order of 20 June 1975 be affirmed.

The sole issue presented in this appeal is whether the district court lacked the authority to render injunctive relief to appellee in view of the prohibition contained in § 7421(a) of the Internal Revenue Code of 1954. For the reasons which follow, we find that the district court was precluded from issuing the restraining order herein by § 7421. Accordingly, the order of the district court is reversed, and the cause is remanded with directions to dissolve the restraining order and dismiss the action.

■ Section 7421(a) of the Internal Revenue Code of 1954 states in clear and precise language that ". . . [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . ." The policy or purpose behind this provision, of course, is "to [protect] the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-

enforcement judicial interference . . ." *Bob Jones University v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). It is also clear that this ban against judicial interference is applicable not only to the assessment or collection itself, but is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes. *Koin v. Coyle*, 402 F.2d 468 (7th Cir. 1968). The restraint placed on the courts in this regard, however, is not absolute. *John M. Hirst & Co. v. Gentsch*, 133 F.2d 247, 248 (6th Cir. 1943). Extraordinary or exceptional circumstances may exist, for example, which are of sufficient importance to warrant court interference. *Singleton v. Mathis*, 284 F.2d 616, 618 (8th Cir. 1960). Therefore, under certain circumstances, a taxpayer may maintain a suit to enjoin the collection of federal taxes. *Martin v. Andrews*, 238 F.2d 552, 554 (9th Cir. 1956). In order that such a suit may be maintained, though, the taxpayer has the burden of proving: (1) that the government could not ultimately prevail under any circumstances; and (2) that equity jurisdiction otherwise exists. *Enochs, supra*, 370 U.S. at 7, 82 S.Ct. 1125; *Pizzarello v. United States*, 408 F.2d 579, 582 (2d Cir. 1969).

■ In the instant case, we are not convinced, based on a careful review of the record before us, that appellee sustained his burden of proving the exceptional circumstances necessary to justify the trial court's intervention into the assessment and collection process. First of all, the record is barren of any evidence which would support the conclusion that the government could not ultimately prevail in the assessment or collection of a deficiency in taxes for the years of 1972 and prior thereto. The fact of the matter is that appellant sought to inspect books and records for the sole purpose of ascertaining the correct tax liability for the years in question. The tax deficiency had already been determined; and this Court is of the opinion that it was improper for the court below to thwart the Service's attempt to obtain material perti-

nent to the assessment. We conclude, therefore, that the first requirement of *Enochs, supra,* has not been satisfied.

█ In this regard, the Court has noted with interest appellee's argument that there is a significant distinguishing feature between the instant case and those cited by appellant—that feature being the fact that the order appealed from herein resulted from the actions of the IRS itself and not from any suit brought by appellee to enjoin those actions. We fully appreciate appellee's contention in this respect. Nevertheless, under the circumstances of the present case, we decline to be persuaded thereby. Although we concede, as we must, that appellee did not initiate proceedings against appellant in an attempt to enjoin the assessment or collection of taxes, it must be admitted that for all practical purposes appellee sought the identical result when he filed his motion for an order directing withdrawal of the notice of deficiency. The net result of appellee's motion, and the obvious intent thereof, was to restrain the IRS from pursuing any activities relating to the assessment and collection of taxes. Accordingly, it could reasonably be argued that appellee herein instituted his own sub-action against appellant for injunctive relief, the potential result of which was in contravention of the spirit and purpose of § 7421(a). In such circumstances, as we have stated above, we hold that it was improper for the district court to intervene and restrain appellant from pursuing its assessment procedures.

█ Second, this Court is not impressed with appellee's argument that he would suffer irreparable harm if equitable relief were not granted. It is clear in this case, as it is in all cases where the IRS asserts a tax claim, that appellee was not without an adequate remedy at law. His remedies were three-fold. First, he could have paid the tax and then proceeded with a suit for refund. *Enochs, supra,* 370 U.S. at 7, 82 S.Ct. 1125. Second, he could have elected to seek redetermination by the Tax Court.

*Bob Jones, supra,* 416 U.S. at 746, 94 S.Ct. 2038. Additionally, appellee could have chosen to refuse to comply with the request for inspection, which would have forced the IRS to seek a judicial determination in an enforcement proceeding. *Dickerson v. Conrad,* 274 F.Supp. 881 (D.Alaska 1967). We conclude, therefore, that the court below lacked the necessary equity jurisdiction to issue injunctive relief to appellee.

Finally, the Court feels constrained to address itself to the lower court's statement concerning its belief that the investigation of appellee "borders on harassment." We are aware of, and subscribe to, the proposition that the IRS should not be allowed to abuse its position of power to harass a taxpayer by means of repeated demands for inspection. The court below was convinced that this occurred in the present case, and we support the trial judge's desire to protect the appellee from such an abuse. However, we cannot conclude from the record that a conscious program of harassment was aimed at appellee. In any event, our review of the record on this subject does not allow us to conclude that any harassment of appellee—if, in fact, there was harassment—amounted to an exceptional or extraordinary circumstance sufficient to avoid the strictures of § 7421(a).

For the foregoing reasons, therefore, the 20 June 1975 order of the district court is REVERSED, and the cause is REMANDED with directions to dissolve the restraining order and dismiss the action.

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals (dissenting).

With unmitigated deference, I am unable to agree that the District Court lacked jurisdiction to issue this restraining order, and I am convinced that the record amply supports a finding of taxpayer harassment in this case. I also feel that the case presents novel legal issues on the interaction of Sec. 7421(a) and Sec. 7605(b) of the Internal Revenue Code which have not been directly addressed by any federal appellate court.

The effect of court-approved taxpayer harassment upon our "voluntary" tax system further impels these few remarks.

### Background

Some knowledge of the background of the case is necessary to fully appreciate the District Court's action.

Tabcor, Inc. is a corporation which coordinates ticket marketing, sales, and distribution for children's shows produced by a companion corporation. The shows are sponsored by various charitable organizations or schools in the Chicago area such as the Knights of Columbus, Elks, Amvets, B'nai B'rith, etc. A sponsoring organization may hire Tabcor as middleman to coordinate sale of tickets to a particular show, or it may handle the details itself. In either case ticket brokers, delivery men and other personnel are used for actual sales of the tickets with Tabcor acting as a clearing house for those shows in which it is involved.

The tax dispute which led to the issuance of the summonses in this case centers around the employment status, for withholding purposes, of brokers and delivery men.

Tabcor had been the subject of an earlier Internal Revenue Service (IRS) investigation for certain quarters of the years 1970 and 1971 which resulted in adjustments of $4,843.27 being paid. After those payments the investigation was closed for the quarters in question, while two other quarters were referred by the revenue officer to the audit division.

An apparently unrelated examination was initiated in March, 1973, to investigate the employment status of certain persons paid by Tabcor in 1971 and in January, 1972. Agent Feddor examined the books and records of Tabcor on at least two occasions and, according to his own work records, spent 93 hours on the case. In October, 1973, the agent asked appellee Dema, president of Tabcor, to voluntarily extend the statute of limitations for the

year 1970 which would otherwise run out on April 15, 1974. Dema objected to the extension and to a subsequent notice of reexamination received for three quarters of 1970 and two quarters of 1971, because he had already paid adjustments for three of those five quarters and the earlier investigation had been closed for those periods. In December, 1973, Dema received Statements of Tax Due for all four quarters of 1970 aggregating over $140,000. Tabcor's gross receipts for 1970 were less than $100,000. Agent Feddor admitted to the District Court at a hearing that he had precipitated these disproportionate assessments because the limitation period was running out for 1970 and that he could not get copies of Tabcor's 1970 return from the IRS regional headquarters in time to make a proper determination because of the slowness of the response of that IRS office. He therefore used the Tabcor 1971 return as a basis for predicting the 1970 tax and told Dema's attorney he would adjust the figures if IRS could see the Tabcor books and records for 1970 again. Agent Feddor also stated to the court that he knew this procedure was unethical but that he felt he had no alternative.

In February, 1974, the two summonses at issue were served, calling for production of various books and records of Tabcor for 1971, 1972 and 1973. Dema again objected, this time raising the provisions of Section 7605(b) as a defense to multiple inspections, because the notice of reexamination from the District Director had specified only two quarters of 1971 and none of 1972 or 1973. Also, the overall action of IRS was attacked as an arbitrary and capricious attempt to make Tabcor carry the burden of paying income taxes which IRS should collect from the individuals involved, whom Tabcor considered to be independent contractors. By May, 1974 Tabcor received two proposed assessments of 100% penalty for the four quarters of 1970 totalling $89,600. (This followed from its failure to pay the $140,-000, previously assessed.) On May 10, 1974, the present action was filed by the government asking the court to enforce the two

summonses calling for production of the Tabcor records for 1971–73.

## Dissenting Opinion

### I

This proceeding was instituted under the provisions of 26 U.S.C. §§ 7402(a) and 7604(a), which give jurisdiction to the District Courts "to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws" at the "instance of the United States." Section 7604(a) specifically provides for the use of court process to "compel * * * production of books, papers, records, or other data." A proceeding to enforce a summons is an adversary proceeding at which the taxpayer "may challenge the summons on any appropriate ground." *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964). The primary challenge raised by appellee in this case is based on 26 U.S.C. § 7605(b):

> *Restrictions on examination of taxpayer.*—No taxpayer shall be subjected to *unnecessary examination or investigations,* and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. (Emphasis supplied.)

The legislative history of this section which was first enacted as Sec. 1309 of the 1921 Revenue Act clearly shows that its purpose was to curb the investigative powers of low-echelon revenue agents from making unnecessary inspections after a thorough examination was supposed to have been completed. 61 Cong.Rec. 5855 (1921). The *enforcement* of Sec. 7605(b), like the other sections of the revenue statutes, is left to the judiciary under Sec. 7402(a). *Cf. United States v. Church of Scientology of California,* 520 F.2d 818 (CA 9, 1975).

Therefore, the decision as to what constitutes an "unnecessary" inspection under the statute is one to be made by the District Court.

The extensive record in this case was developed in more than a year of judicial proceedings which saw the attorneys for the parties before a judge fifteen times. Six of these hearings are transcribed fully in the record. The District Court showed concern throughout the action with doing justice to all parties and as a result allowed Dema to conduct limited discovery of IRS documents and personnel in the development of evidence of harassment and lack of necessity for further inspections.[1]

The Supreme Court has set forth standards which the Commissioner must meet to obtain enforcement of his summons:

> He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, *that the information sought is not already within the Commissioner's possession,* and that the administrative steps required by the Code have been followed—in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and *has notified the taxpayer in writing to that effect.* This does not make meaningless the adversary hearing to which the taxpayer is entitled before enforcement is ordered. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). (Emphasis supplied and footnote omitted.)

In addition, the same opinion discussed the circumstances under which a court could inquire into the underlying reasons for the examination.

> It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. *Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass*

---

1. Such discovery in the context of IRS summons enforcement proceedings has only

recently been allowed. *See e. g. United States v. Church of Scientology of California, supra.*

*the taxpayer* or to put pressure on him to settle a collateral dispute, *or for any other purpose reflecting on the good faith of the particular investigation.* The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing, as was made in this case, that the statute of limitations for ordinary deficiencies has run *or that the records in question have already been once examined.* 379 U.S. at 58, 85 S.Ct. at 255. (Emphasis supplied.)

Under these guidelines, a District Court could deny enforcement of a summons if: (1) the commissioner failed to establish one of the necessary elements above, or (2) if the court determined that enforcement would otherwise be an abuse of its process.

Based on the documents produced by IRS, the deposition of Revenue Officer Dillon, and the testimony in court of Dema and Revenue Agent Feddor, the court concluded that additional inspections of Tabcor, Inc.'s records for 1971, as sought in the IRS summonses, were unnecessary. That conclusion is supported by the evidence.

The court ordered Dema to produce records for 1972 and 1973, presumably because the evidence was insufficient to show previous inspections for those years. The court also attempted to keep further IRS intrusions to a minimum by obtaining an estimate from Agent Feddor of how long he needed access to the records to complete work on the case. Agent Feddor was allowed ten days by the court (twice Feddor's estimate) to inspect the records and return them to Dema. Representations of counsel for the government show acquiescence in the limitations. After the records had been produced and inspected in accordance with the court's terms, the action was dismissed without prejudice.

However, the IRS apparently was not satisfied with its examinations and, accord-ing to Dema, asked to inspect the Tabcor books further, and also to examine the personal records of Mr. and Mrs. Dema.[2] Dema was also notified of a deficiency in his personal income tax for the year 1970 on the same day the enforcement proceeding was dismissed.[3] Dema considered these actions to be inconsistent with the court's earlier "order" and subsequently moved for an order to show cause and for a contempt judgment against the several IRS employees involved. The government filed a motion to strike raising procedural grounds, and Section 7421 of the I.R.C. (26 U.S.C. § 7421) ("the Anti-injunction Act") as defenses.

Dema's allegations in his motion, regarding IRS' repeated requests for *more* inspections of his records, were neither admitted nor denied by the government. The government simply argued that production of his records was not the only remedy available to Dema in seeking to have the deficiency notice removed.

At the hearing on the motion,[4] when the government again argued that Sec. 7421 precludes any injunction against the revenue-collecting apparatus of the government, the court stated that it would not issue an injunction order, but "a restraining order preventing the government from seeking any additional books in this case." Later in the hearing, counsel for the government requested clarification of the order and its possible effect on the collection machinery for this and other deficiencies of Tabcor. The court stated "[I] am saying * * * they can do whatever they want to do * * *. All I am saying is they are not going to get any more books from these people." It is clear that the court was in no way attempting to enjoin the *collection* process. It was simply preventing the further book-inspecting harass-

---

**2.** Although there is some confusion among the parties and the court as to whether any personal records had been previously summoned, it is clear from the text of the summonses at issue that they were directed only to the production of Tabcor, Inc. records.

**3.** The statute of limitations for 1970 would have run out seven days later.

**4.** The court apparently treated Dema's motion as one under Fed.R.Civ.P. 60(b), which it could properly do under 60(b)(3) or 60(b)(6).

ment of this taxpayer.[5] Counsel for Dema pointed out that certain books and records would be produced voluntarily by Dema in subsequent administrative proceedings concerning the allegedly outstanding deficiencies. In its "motion to strike," the government had admitted that Dema may contest the deficiency assessments without producing his records, and that production is no guarantee of the assessment being altered. Nevertheless, the government argued that an injunction would violate Section 7421(a) by somehow restraining the assessment or collection of Dema's taxes and has relied on that argument before us.

## II

Section 7421(a) of the Internal Revenue Code, the so-called "anti-injunction" act, prohibits a court from entertaining any suit for the purpose of restraining the assessment or collection of any tax. The government contends that this proscription also extends to suits which seek to restrain any and all acts *necessary or incident* to assessment or collection, i. e., the production of financial records.[6]

Recent decisions of this and other courts have broadly interpreted Sec. 7421(a) to remove jurisdiction in such collateral areas as suits to prevent revocation of tax-exempt status, *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Commissioner v. Americans United, Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); suits to prevent the Director of Internal Revenue from using illegally seized evidence to compute tax assessments, *Koin v. Coyle*, 402 F.2d 468 (CA 7 1968); *Zamaroni v. Philpott*, 346 F.2d 365 (CA 7) *cert. denied* 382 U.S. 903, 86 S.Ct. 238, 15 L.Ed.2d 157 (1965) and suits to prevent local police from supplying information to IRS on narcotics peddlers, *Lewis v. Sandler*, 498 F.2d 395 (CA 4 1974). None of these cases, however, has faced the question of the interaction between Sec. 7421(a) and Sec. 7605(b) in a situation where evidence of IRS harassment is presented by the taxpayer. Neither was that precise issue addressed in *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), where the Supreme Court fashioned the narrow judicial exception to Sec. 7421(a) relied on by the majority. Mr. Justice Blackmun's dissent in *Commissioner v. Americans United, supra*, sets forth the most logical procedure for analysis of this novel question:

> In considering § 7421(a), a two-step analysis is necessary: (1) When does the statute apply? (2) When it is applicable, under what circumstances is an exception permitted? . . .
>
> The threshold question, obviously, is whether the present litigation is a "suit for the purpose of restraining" any tax.
>
> 416 U.S. at 767, 94 S.Ct. at 2061.

Contrary to the government's contention and the majority's opinion, this is not "a suit for the purpose of restraining" collection of any tax. A summons enforcement proceeding is the proper forum for a taxpayer who believes himself to be the subject of "unnecessary inspections" to invoke the

---

**5.** At the hearing on Dema's final motion the District Court stated unequivocally:

> I don't know anything about this man [Agent Feddor] but I have heard him testify and I have watched what the operation is. I think it has become a personal vendetta for anybody to make the kind of evaluation that he did out of the clear blue sky and put the burden on the taxpayer to come in and try to offset it; *in my judgment it is harassment.* (Bracketed matter and emphasis supplied.)

**6.** While the proposition may be plausible when the records are needed to make an assessment or collection, restraining production would seem to have no effect when assessments have already been made based on previous inspec-

tions, or other methods of prediction, or when all records in the period covered by the injunction have already been inspected. In this case IRS had already inspected Tabcor records for the years 1970–73 at least once. The only records covered by the order which may not have been inspected were the Demas' personal records. A notice of deficiency against the Demas personally for the year 1970 had already been issued. So at most, the order might be construed to affect assessment or collection of the Demas' personal tax for 1971 and 1972. Years prior to 1970 were outside the statute of limitations, absent fraud or other special circumstances.

protections of Section 7605(b). *Donaldson v. U. S.*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *In re Peter*, 322 F.Supp. 270 (E.D.Ky.1970); *Dickerson v. Conrad*, 274 F.Supp. 881 (D.Alaska 1967). A finding by the court of *lack of necessity* for inspections of records under Sec. 7605(b) should carry with it the conclusion that such inspections were *not* "necessary or incident to assessment or collection" for purposes of Section 7421(a). This is true whether the basis for the finding is harassment, improper purpose or any of the other grounds enumerated above. An injunction which issues against IRS as a result of a finding that further inspections are "unnecessary" may or may not restrain the collection process (see footnote 5, *supra*). But the purpose of Sec. 7605(b)—to limit unessential IRS inspections—would be meaningless if truly "unnecessary" inspections could never be restrained. Therefore, the possibility of an ancillary restraint on the collection process, while an important consideration in the court's fashioning of an appropriate remedy, should not automatically foreclose the use of injunctive relief in an appropriate case. Since, in my view, the anti-injunction statute is inapplicable to summons enforcement proceedings, the exception requirements of *Enochs v. Williams Packing Co., supra*, do not come into play.

The government's concern as to the possible effect of the injunction on discovery in subsequent litigation over the liabilities for years up to and including 1972 is unfounded. Any lawful discovery in a judicial proceeding would be under authority of a court, and would not violate a properly fashioned injunction.

### III

A judicial finding of IRS harassment should preclude further conduct of any kind, including service of a new summons, which would place unnecessary burdens on the taxpayer. In the situation present in this case, a restraining order against IRS would seem wholly appropriate, even if res

judicata would bar a subsequent IRS action on the same operative facts. The taxpayer, having once proved his case, should not be subjected to the further harassment of having to defend the same issues again.

I fully recognize that the Commissioner's burden to obtain enforcement of a summons is very slight and the taxpayer's burden in obtaining a denial of enforcement or injunctive relief is extremely heavy. Nevertheless, I believe judicial intervention is proper, nay compelled, when a taxpayer does meet that heavy burden. There would be no need for Sec. 7605(b)—and no need for the power of the District Court—if such were not the case.

Leaving a taxpayer to his remedies in the Tax Court or Court of Claims on a possibly unrelated tax dispute would offer little or no relief from proven IRS harassment or improper IRS purpose related to inspections of his records. Likewise, seeking a judicial determination in a new enforcement proceeding would be an inadequate remedy for harassment when "unnecessary" multiple inspections of records are the very basis of that harassment.[7] Even if the taxpayer should prevail in a collateral tax claim, he could not be compensated for the intrusions resulting from "unnecessary" IRS inspections.

The irreparable injury done the taxpayer when harassed by his government is but a part of the injury done a society attempting to live free. Arbitrary, arrogant and capricious action by a government agent, engaged in a vendetta and unfettered by law, does injustice to us all, including especially the government itself. Such action cries out for the healing power of judicial intervention.

I conclude that equitable relief in the form of an injunction was fully appropriate in this case.

### IV

The record contains adequate evidence upon which the court below found harass-

---

7. Such a proceeding would offer a truly hollow remedy if the court were precluded from en-

joining the harassment by Sec. 7421(a), as the majority suggests.

ment on the part of IRS. Agent Feddor's unethical action in precipitating tax assessments for 1970 as well as the IRS' apparent disregard of the court's clear instructions to limit the further unnecessary intrusion on Dema's business, would appear sufficient of themselves. The court may have logically questioned the propriety of the personal deficiency notice served the very day on which it first dismissed the action, in view of the earlier, admittedly unethical practices used by Agent Feddor to avoid the statute of limitations. Absent a clear delineation of the error requiring reversal in the majority opinion, and I find none, I cannot join my colleagues. Being convinced that no such error is shown by the record, I would affirm the order of the District Court in all respects.