[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12024

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MICHAEL L. MEYER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-60704-BB

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

JORDAN, Circuit Judge:

The Anti-Injunction Act, 26 U.S.C. § 7421(a), provides in relevant part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person[.]"  The question before us is whether the Act bars a defendant from moving—in an action initiated by the government—for a protective order to restrain the government from using his responses to requests for admission when assessing a tax penalty in a separate administrative proceeding.  Because moving for a protective order in an action filed by the government does not amount to maintenance of a "suit," we hold that the Act does not apply.

I

In 2018, the government filed a complaint against Michael L. Meyer, alleging that he promoted a tax evasion scheme in which he advised his clients to claim unwarranted federal income tax deductions for bogus charitable donations.  The government sought to enjoin him from operating his business, as well as disgorgement of all of the proceeds from his scheme.

Over the course of the next year, the parties engaged in extensive discovery.  As relevant here, the government served over 1,500 requests for admissions upon Mr. Meyer under Federal Rule of Civil Procedure 36.  Mr. Meyer answered the requests with the assistance of counsel.

Mr. Meyer eventually settled with the government and agreed to a permanent injunction prohibiting him from, among other things, representing anyone other than himself before the IRS; preparing federal tax returns for others; or furnishing tax advice regarding charitable contributions. On April 26, 2019, the district court entered a final permanent injunction against Mr. Meyer and closed the case. The order did not include any language regarding the confidentiality or future use of discovery-related materials.

On July 24, 2020, Mr. Meyer received a notice from the IRS informing him that he owed millions of dollars in penalties in connection with his promotion of an abusive tax shelter. *See* 26 U.S.C. § 6700. The notice included an attached Form 866-A, Explanation of Items, which detailed the basis of the IRS' decision. The Explanation of Items specifically relied on Mr. Meyer's Rule 36 admissions, obtained in the 2018 tax case that had been filed by the government. Those admissions were also attached as a composite exhibit.

Mr. Meyer responded to the notice with a letter protesting the IRS' use of his admissions under Rule 36(b) ("An admission . . . is not an admission for any other purpose and cannot be used against the party in any other proceeding."). The IRS rejected Mr. Meyer's objection to the use of his admissions, asserting that the Federal Rules of Civil Procedure do not apply to its administrative determinations.

On November 20, 2020, after efforts to resolve the matter directly with the IRS failed, Mr. Meyer filed a motion for a protective order in the closed 2018 tax case. In his motion, Mr. Meyer asked the district court to issue an order prohibiting the government from using his Rule 36 admissions "as the factual basis for penalties in a separate IRS penalty examination." D.E. 98 at 1.

The government opposed Mr. Meyer's motion. It argued that the district court lacked jurisdiction because it had not waived sovereign immunity and because the Anti-Injunction Act barred the relief sought by Mr. Meyer. *See* D.E. 104 at 7-13. Alternatively, it argued on the merits that the IRS administrative determination was not governed by the Federal Rules of Civil Procedure and that Mr. Meyer had not cited applicable authority for the relief requested. *See id.* at 13-17.[1]

The district court referred the motion to a magistrate judge. In her report and recommendation, the magistrate judge recognized that Mr. Meyer's motion was "not a separate taxpayer 'suit,'" but ruled that it was barred by the Anti-Injunction Act because "a protective order in [the government's case against Mr. Meyer] would have the same effect as an injunction" by "ultimately precluding the IRS from using [his] Rule 36 Admissions in the § 6700 penalty examination." D.E. 106 at 7.

---

[1] The government did not argue in its opposition memorandum that the district court lacked jurisdiction because the 2018 tax case was closed.

In reaching this conclusion, the magistrate judge relied on cases from this Circuit (and from the Sixth, Seventh, and Tenth Circuits) holding that the Act bars a taxpayer from seeking legal recourse that would ultimately restrain the IRS from its tax-collection activities. *See Dickens v. United States*, 671 F.2d 969, 970-71 (6th Cir. 1982); *Koin v. Coyle*, 402 F.2d 468, 469 (7th Cir. 1968); *Lowrie v. United States*, 824 F.2d 827, 828-30 (10th Cir. 1987); *Gulden v. United States*, 287 F. App'x 813, 816 (11th Cir. 2008). In all those cases, however, the taxpayer seeking relief had initiated the action against the government. *See Dickens*, 671 F.2d at 970 (taxpayer brought an action for mandamus, injunctive, and declaratory relief seeking to prohibit the IRS from using information obtained during an FBI investigation for tax assessment purposes); *Koin*, 402 F.2d at 468-69 (taxpayer filed an action seeking a declaratory judgment that would restrain the IRS from using illegally seized evidence as the basis for a tax assessment); *Lowrie*, 824 F.2d at 828 (taxpayers brought an action seeking the return of business records and a permanent injunction barring the IRS' use of those records in any proceeding against them); *Gulden*, 287 F. App'x at 814-15 (taxpayer filed an action against the IRS, asserting that it had unlawfully filed tax returns on his behalf).

The district court adopted the report and recommendation and issued its own order echoing the magistrate judge's reasoning. It denied the motion for a protective order and explained that though "[Mr. Meyer had] not filed a separate taxpayer 'suit,'" granting his motion would "preclude the IRS from using [his] Rule 36

[a]dmissions in the § 6700 penalty examination" and thereby violate "the very purpose of the Anti-Injunction Act." D.E. 112 at 4-5.

Mr. Meyer appeals the district court's order. He argues that his motion for a protective order is not a "suit" and therefore is not barred by the Act.

## II

The interpretation of the Anti-Injunction Act presents a question of law subject to plenary review. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995); *Hoever v. Marks*, 993 F.3d 1353, 1357 (11th Cir. 2021).

## A

Congress enacted the Anti-Injunction Act in 1867 to restrain efforts by the nation's first taxpayers to enjoin the collection of taxes. *See* Act of Mar. 2, 1867, § 10, 14 Stat. 475; *State Railroad Tax Cases*, 92 U.S. 575, 613 (1875). The current version of the Act, passed in 1954 and codified as 26 U.S.C. § 7421(a) in the Tax Code, does not differ meaningfully from the original. It provides, subject to several exceptions not at play here, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." § 7421(a). Where the Act applies, it deprives a federal court of jurisdiction. *See In re Walter Energy, Inc.*, 911 F.3d 1121, 1136 (11th Cir. 2018)

The Supreme Court has explained that the Act "protects the Government's ability to collect a consistent stream of revenue, by

barring litigation to enjoin or otherwise obstruct the collection of taxes." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012). In practice, this means that a taxpayer who objects to paying a federal tax cannot sue to challenge that tax. Instead, he must first pay the tax and then sue the government for a refund. *See CIC Servs., LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1586 (2021).

Mr. Meyer argues that his motion for a protective order is not barred by the Act because its language is limited to a "suit" brought "for the purpose of restraining the assessment or collection of any tax." § 7421(a). The motion, he asserts, does not amount to a "suit."

The government responds that Mr. Meyer's motion is barred by the Act because it seeks injunctive relief restraining the IRS' tax assessment and collection efforts. It also contends—for the first time on appeal—that the district court lacked jurisdiction because the 2018 tax case was closed.

To resolve this dispute, we must determine the meaning of the term "suit" in § 7421(a). Our starting point is "the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (citations and internal quotation marks omitted). We ask "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (citations and internal quotation marks omitted).

There is no statutory definition of the term "suit," so we attempt to discern its ordinary meaning. *See, e.g.*, *United States v. Dominguez*, 997 F.3d 1121, 1124-25 (11th Cir. 2021) (using various dictionaries to define a term because the relevant statute failed to provide a definition). In so doing, we look to the understanding of the term "suit" at the time of enactment. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020).

In the mid-1800s, the term "suit" meant "an action for the recovery of a right or claim" or "to institute an action." John Craig, The Universal English Dictionary 800 (1869). Legal texts of the era similarly defined "suit" as "[a]n action." II Bouvier Law Dictionary 558 (1857). Thus, "*suit* and *action* [were] constantly used as synonym[s]" and both were understood to mean "[t]he prosecution of some claim, demand, or request." Alexander M. Burrill's Law Dictionary and Glossary 954 (1867). And courts used the term "suit" in that way. *See, e.g.*, *Calvert v. Bradley*, 57 U.S. 580, 597 (1853) ("The instrument on which the plaintiffs instituted their suit was a lease . . . ."). *Accord* Webster's Complete Dictionary of the English Language 17 (1880) (defining the term "action" as a "suit or process, by which a demand is made of a right in a court of justice; a claim made before a tribunal").

When the Act was codified as § 7421(a) in 1954, the understanding of the term "suit" remained unchanged. *See, e.g.*, Black's Law Dictionary 1603 (5th ed. 1951) (defining "suit" as "a generic term . . . [which] applies to any proceeding by one person or persons against another or others in a court of justice in which the

plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right"); Merriam-Webster's Dictionary 1705 (1956) (defining "suit" as "an action or process for the recovery of a right or redress of a wrong"). That understanding still holds true today. *See* Black's Law Dictionary 1735 (11th ed. 2019) (defining "suit" as "[a]ny proceeding by a party or parties against another in a court of law"); Merriam-Webster's Dictionary of Law 477 (2016) (defining "suit" as "a request to initiate legal proceedings" or "a proceeding to enforce a right or claim; *specif.* an action brought in a court seeking a remedy for injuries suffered or a determination of rights"); Bryan A. Garner, Garner's Dictionary of Legal Usage 862 (3d ed. 2011) (explaining that "suit," "lawsuit," "action," "case," and "cause" are nouns which "denote proceedings instituted for the purpose of enforcing a right or otherwise seeking justice"). In ordinary usage today, a "suit" is "[a]n action or process in a court for the recovery of a right or claim." Merriam-Webster's Dictionary 1249 (11th ed. 2020). *See also* The American Heritage Dictionary of the English Language 1731 (4th ed. 2009) (defining "suit" as a "court proceeding to recover a right or claim").

Contrary to the government's assertion, a "motion" has long been understood as distinct from a suit. *See, e.g.*, Alexander M. Burrill's Law Dictionary and Glossary 730 (1867) (defining "motion" as "an application made to the judge or judges of a court . . . for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant"); Black's Law Dictionary 1164

(6th ed. 1951) (defining "motion" as "[a]n application for a rule or order made . . . to a court or judge"). A party may make a motion within a suit, but a motion generally does not constitute a suit unto itself. *See* II Bouvier Law Dictionary Desk Ed. 1786 (2012) ("A motion is presented to a court in a *pending* action by one party, the movant, who moves some matter for consideration[.]") (emphasis added); The American Heritage Dictionary of the English Language 1147 (4th ed. 2009) (defining a "motion" as "[a]n application made to a court for an order or ruling").

Based on these uniform sources, a "suit" is a judicial proceeding or action initiated for the purpose of enforcing a right or ensuring compliance with the law. That is how the term was understood when the Anti-Injunction Act first became law and how it is understood today. The government, and not Mr. Meyer, is the only party that filed a "suit" here—i.e., the 2018 tax case—and that action was not "for the purpose of restraining the assessment or collection of a tax." Because we must "presume Congress 'says in a statute what it means and means in a statute what it says[,]'" *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 487 (11th Cir. 2015) (citation omitted), Mr. Meyer's motion for a protective order is not a "suit" and is not barred by the Act. The government is not the master of the term "motion" and cannot make it do the work of a "suit."[2]

---

[2] "'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean – neither more nor less.' 'The question is,' said Alice, 'whether you *can* make words mean so many different things.'

Our conclusion is bolstered by persuasive cases considering this issue in somewhat similar circumstances. The cases are *United States v. Mellon Bank, N.A.*, 521 F.2d 708 (3d Cir. 1975), and *United States v. First National City Bank*, 568 F.2d 853 (2d Cir. 1977).

In *Mellon Bank*, the United States brought an action against a bank, seeking to access the taxpayer's safe deposit box. *See* 521 F.2d at 708. The taxpayer intervened in the suit and filed a motion urging the court to stop the government from accessing his safe deposit box. *See id.* The district court denied the taxpayer's motion, applying the same rationale as the district court here. *See id.* The district court in *Mellon Bank* concluded that the taxpayer's request, though not a suit, would ultimately preclude the IRS from assessing and collecting taxes and was accordingly barred by the Anti-Injunction Act. *See id.* The Third Circuit reversed, holding that the district court had erred. *See id.* The motion was not barred by the Act because the taxpayer "did not sue to enjoin the assessment or collection of any tax. In fact[,] he filed no suit at all." *Id.* at 711.

The Second Circuit came to the same conclusion in *First National City Bank*. As in *Mellon Bank*, a taxpayer sought to

---

'The question is,' said Humpty Dumpty, 'which is to be master – that's all.' [ . . . ] 'That's a great deal to make one word mean,' Alice said in a thoughtful tone. 'When I make a word do a lot of work like that,' said Humpty Dumpty, 'I always pay it extra.'" Lewis Carroll, Alice's Adventures in Wonderland & Through the Looking Glass 124–25 (New York: The MacMillan Company 1897).

intervene in an action the IRS filed against a bank seeking access to the contents of his safe deposit box. *See* 568 F.2d at 854. Like the Third Circuit in *Mellon Bank*, the Second Circuit rejected the argument that the Anti-Injunction Act barred the taxpayer from intervening and raising claims that would restrain the IRS' ability to assess or collect taxes. *See id.* at 856-67. In doing so, the Second Circuit reasoned that "[§] 7421(a) has no application to counterclaims or defenses interposed by a taxpayer in an action brought by the government. By its terms, this statute applies only to a 'suit for the purpose of restraining the assessment or collection of any tax,' meaning of course a suit by a taxpayer." *Id.* at 856. The Second Circuit further observed that "[i]t would seem fundamental that when Congress confers jurisdiction upon the district courts to entertain a government action to collect taxes, it may not bar a taxpayer from asserting in such action counterclaims or defenses which affect his rights with respect to the taxes sought to be collected." *Id.*

## B

The government points us to *United States v. Dema*, 544 F.2d 1373 (7th Cir. 1976), in support of its position. In *Dema*, the government filed a petition in the district court seeking to enforce summonses issued by the IRS. The taxpayer refused to comply with the summonses and asked the district court to quash them. *See id.* at 1375. The district court ordered the taxpayer to produce certain corporate records but quashed the summons as to his personal records. *See id.* After the records were produced, the district

court dismissed the action without prejudice. On the same day, the IRS mailed a notice of deficiency to the taxpayer with respect to the personal taxes at issue in the case. *See id.* In response, the taxpayer filed a motion asking the district court to issue an order to show cause why the IRS agent working on the case should not be held in contempt of court for violating the previous order quashing the summons as to personal records, and for an order directing withdrawal of the notice of deficiency. *See id.* After a hearing, the district court entered an order permanently restraining the IRS from issuing any subpoenas or requesting any records from the taxpayer, his wife, or his company, and suppressed any existing subpoenas or requests for the tax years at issue in the case. *See id.*

The government appealed and argued that the Anti-Injunction Act prohibited the taxpayer's motion because it extended "to all suits which seek to restrain any and all acts necessary or incident to the assessment or collection of taxes." *Id.* The taxpayer asserted, among other things, that his case differed from those cited by the government because the order at issue "resulted from the actions of the IRS itself and not from any suit brought by [him] to enjoin those actions." *Id.* at 1377.

The Seventh Circuit acknowledged this distinction, but ultimately reversed, holding that the Act did prohibit the district court from issuing the restraining order. *See id.* It reasoned as follows:

> Although we concede, as we must, that appellee did not initiate proceedings against appellant in an attempt to enjoin the assessment or collection of taxes,

it must be admitted that for all practical purposes appellee sought the identical result when he filed his motion for an order directing withdrawal of the notice of deficiency. The net result of appellee's motion, and the obvious intent thereof, was to restrain the IRS from pursuing any activities relating to the assessment and collection of taxes. Accordingly, it could reasonably be argued that appellee herein instituted his own sub-action against appellant for injunctive relief, the potential result of which was in contravention of the spirit and purpose of § 7421(a).

*Id.*

The government asks us to rely on the Seventh Circuit's reasoning in *Dema* because it is consistent with the purpose of the Anti-Injunction Act. In doing so, the government attacks Mr. Meyer's statutory reading despite Congress "mention[ing] 'suit' in the Act[.]" Appellee's Br. at 36. We find the government's argument unpersuasive for several reasons.

First, "suit" is not a peripheral term in the Act; it is the one thing the Act expressly bars. And because "each word in a statute" should "carr[y] meaning," *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 70 (2011), we cannot discard or minimize the term "suit" in § 7421(a). *See also Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed.").

21-12024               Opinion of the Court                    15

Second, even if the general purpose of the Act were furthered by the government's position, that cannot override the established understanding of the term "suit." *See Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373–74 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action."). In any event, not all "suits" that impair the government's administration of the Tax Code are barred by the Anti-Injunction Act. *See CIC Servs.*, 141 S. Ct. at 1588–89 ("A reporting requirement is not a tax; and a suit brought to set aside such a rule is not one to enjoin a tax's assessment or collection.").

Third, Congress could have drafted the Act to include any motion, defense, intervention, or other legal maneuver that would or could impede or prevent the IRS from achieving its tax administration, assessment, and collection aims. Instead, it chose the term "suit," whose meaning has not evolved in more than 150 years of use. And when "the terms of a statute [are] unambiguous, judicial inquiry is complete except in 'rare and exceptional circumstances.'" *Rubin v. United States*, 449 U.S. 424, 430 (1981) (citation omitted).[3]

---

[3] We note that the Tax Injunction Act, 28 U.S.C § 1341, seems to be written more broadly in this respect than the Anti-Injunction Act, as it provides that "district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State."

Fourth, even if we were to employ the "spirit and purpose" approach applied in *Dema*, the Seventh Circuit narrowly tailored its holding to "the circumstances of [that] case[.]" 544 F.2d at 1377. The taxpayer in *Dema* did not request, as Mr. Meyer does, an order enforcing the limitations of the discovery rules on material obtained in an action filed by the government. *See id.* at 1375. Instead, he sought an order directing the IRS, among other things, to withdraw a notice of deficiency—the IRS' determination of the taxes he owed. *See id.* The order at issue in *Dema*, moreover, prohibited the IRS from subpoenaing *any* documents from the taxpayer. *See id.* This essentially constituted a total restraint on the IRS' ability to assess penalties against him. *See id.* That is not the case here. Mr. Meyer's motion seeks only to enforce his understanding of the rules of discovery, not to restrain the IRS from using other mechanisms to investigate and assess tax penalties against him.

## C

The government also asserts that the district court lacked jurisdiction to entertain Mr. Meyer's motion because the 2018 tax case was closed. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021). As noted earlier, this argument was not made by the government below. *See* D.E. 104 at 7-17; D.E. 108 at 10-21. We therefore decline to consider it for the first time on appeal.

A litigant "generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at

21-12024          Opinion of the Court          17

the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Indeed, a federal court cannot address the merits of a dispute unless it satisfies itself that subject-matter jurisdiction exists. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Because we are not reaching the merits of Mr. Meyer's motion, however, we are not obliged to address the government's new argument that under Rule 36 and *Absolute Activist* the district court lacked jurisdiction to entertain the motion in the closed 2018 tax case. Having resolved the only jurisdictional issue decided by the district court, we think it best to leave the government's additional argument for resolution on remand. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("While . . . jurisdictional questions ordinarily must precede merits determinations in dispositional order, . . . there is no mandatory sequencing of jurisdictional issues.") (citations and internal quotation marks omitted); *Bouchard Transp. Co. v. Fla. Dep't of Env't Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996) ("[T]he district court did not address whether DEP was entitled to Eleventh Amendment immunity in the mediation order, and we decline to exercise our discretion to address this issue for the first time on appeal."). *Cf. McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313–15 (11th Cir. 2021) (addressing certain non-merits issues and remanding for the district court to consider whether there was diversity or admiralty jurisdiction).

### III

We vacate the district court's dismissal of Mr. Meyer's motion under the Anti-Injunction Act and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.