**Louis COLANGELO, Plaintiff-Appellee,**

v.

**UNITED STATES of America et al., Defendants-Appellants.**

**No. 77–1400.**

United States Court of Appeals, First Circuit.

Argued Nov. 10, 1977.
Decided May 17, 1978.

---

**2.** We do not imply that the evidentiary ruling was incorrect.

F. Arnold Heller, Atty., Tax Div., Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Edward F. Harrington, U. S. Atty., Boston, Mass., Gilbert E. Andrews, and Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for defendants-appellants.

Avram G. Hammer, Boston, Mass., for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, GORDON *, District Judge.

MYRON L. GORDON, District Judge.

The appellee Louis Colangelo filed this action, claiming that wagering excise tax jeopardy assessments of $61,797.63 and a federal tax lien in the same amount lodged against his property were based on information obtained from illegal wiretaps conducted by the FBI. A three-judge court stayed the Government's sale of the appellee's property pending a decision in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). *Quintina v. United States*, 359 F.Supp. 769 (D.Mass. 1973).

In *Giordano*, the Supreme Court held that wiretap applications which were not authorized by the attorney general or his special designate did not conform to the requirements of 18 U.S.C. § 2516(1). Evidence derived from wiretaps which were in turn based on these nonconforming wiretap applications was ordered suppressed.

In July, 1975, following the *Giordano* decision, the Government recomputed the appellee's wagering excise tax liability based only on information secured independent of the illegal wiretaps. The appellee's tax liability was assessed at $7,147.99, instead of $61,797.63, for the period July-November, 1971. On March 11, 1977, the district director of the Internal Revenue Service sent the appellee a letter setting forth the revised total tax due. However, the Internal Revenue Service refused to modify the tax liens to reflect the appellee's reassessed tax liability.

* Of the Eastern District of Wisconsin, sitting by designation.

Mr. Colangelo requested that the district court discharge the federal tax liens in the amount of $61,797.63 filed in the Suffolk County Register of Deeds on February 8, 1973, and April 20, 1973. In an unpublished memorandum and order dated June 13, 1977, the district court directed the Internal Revenue Service to discharge the liens. The district court denied the Government's motions to amend the judgment and for a stay pending trial. The Government applied to this court for a stay pending the instant appeal. In an order dated October 19, 1977, Chief Judge Coffin granted the Government's motion for a stay.

The Government contends that this suit is barred by 26 U.S.C. § 7421(a), which provides in part that ". . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ." We are obliged to give the statute "almost literal effect." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). The prohibition against restraint on the assessment and collection of taxes "is applicable not only to the assessment or collection itself, but . . . to activities which are intended to or may culminate in the assessment or collection of taxes." *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976).

The district judge considered it "clear" that this action was not barred by § 7421 because Mr. Colangelo sought "an order correcting the public record which now saddles his real estate with a recorded lien in an amount . . . grossly in excess of . . . his presently assessed tax liability." We recognize that the liens as originally filed reflect a claim for taxes above the amount which the Government now concedes may properly be assessed against Mr. Colangelo. However, the prohibition of § 7421(a) is broad enough to proscribe judicial interference with federal tax liens absent exceptional circumstances. *MBI Motor Co. v. Lotus/East Inc.*, 399 F.Supp. 774 (E.D.Tenn.1975).

■ The district court's order would result in a total discharge of the tax liens.

That court declined to permit the amendment of the notices of liens to reflect the reduced amount of Mr. Colangelo's tax liability. In its brief, the Government represents, and the appellee apparently agrees, that several security interests were filed subsequent to the filing of the Government's liens against Mr. Colangelo's property. Thus, it would appear that the order of the district court would cause the Government to relinquish its priority among the appellee's secured creditors with respect to his reassessed tax liability of $7,147.99. Although a portion of the liens reflect sums no longer assessed or collectable, another portion, more than $7,000, is still currently assessed, and the Government is entitled to pursue collection of this amount. We believe that the total discharge of the liens, as ordered by the lower court, would impede and restrain the collection of taxes to the extent of over $7,000, contrary to § 7421(a).

Arguably, there would be no restraint on the collection of taxes if the Government's liens in the sum of $61,797.63 were ordered replaced, without any loss of priority, with other liens showing the appellee's actual assessed tax liability. In the district court, Mr. Colangelo sought removal *or* reduction in the amount of the liens, but on appeal he urges only removal. The Government, however, requests in the alternative that it be permitted to file amended notices of liens which preserve its original priority. Neither party had advanced any authority from which we might conclude that a federal court can properly affect the priorities of state court liens on an individual's property by ordering that liens in one amount be supplanted by new liens in a different amount. We thus decline to order the alternate relief proposed by the Government.

Having concluded that this is an action to restrain the assessment or collection of taxes, we still must decide whether it falls within the narrow exception to the bar of § 7421. An injunctive suit is not proscribed by § 7421 if it is shown that (1) the appellee will suffer irreparable injury absent an injunction, and (2) "under no circumstances [can] the Government ultimately prevail

. . . ." *Enochs v. Williams Packing Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962); *Bob Jones Univ. v. Simon, supra,* 416 U.S. at 737, 94 S.Ct. 2038.

■ Addressing the second requirement first, Mr. Colangelo has the burden of showing that, based on information available to the Government at the time of the suit, liberally construed in its favor, the Government could not prevail. *Commissioner of Int'l Revenue v. Shapiro,* 424 U.S. 614, 628 n.10, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *Bob Jones Univ. v. Simon, supra*; *Enochs v. Williams Packing Co., supra.* In this regard, the appellee contends that "[b]ecause the $61,797.63 assessment was concededly based on illegal wiretaps, it and the lien securing its payment were unlawful." Chief Judge Coffin, in dissent, takes a similar position by stating that once the Supreme Court decided *United States v. Giordano, supra,* "there was no legal basis to the lien, and the IRS should have withdrawn it." We do not agree. The $61,797.63 liens were valid when filed in 1973, prior to the *Giordano* decision. Subsequently, there was only a partial abatement of the assessment on which the liens were based. Only that portion of the original assessment which stemmed from the illegal wiretap evidence was eliminated. Contrary to the dissent, we do not believe that the liens were invalid *in their entirety,* either when filed or after the ruling in *Giordano.*

The Government, conversely, raises relevant considerations which preclude a positive declaration that it will not ultimately prevail. Although it refers to no statute either permitting or prohibiting the total discharge order by the district court, the Government does point out that under 26 U.S.C. § 6325(a)(1) the Commissioner may issue a certificate of release of lien only after finding that the assessed liability "has been fully satisfied or . . . become legally unenforceable . . . ." Here part, but not all, of the originally assessed tax liability has become unenforceable. Moreover, a mortgagee is not required to modify a mortgage to reflect reductions in a mortgagor's current outstanding liability on the underlying debt.

A secondary consideration is the administrative burden that would be placed on the Government if it were obligated to modify all existing tax liens. We have already noted that a total discharge of the liens might damage the Government's priority as to the assertedly valid portions thereof. Although in the instant case the present assessment is but a small fraction of the original one, it would seem particularly inequitable to require a total discharge of a lien where the original assessment was only slightly diminished. For these reasons, we are unable to conclude that the Government would clearly be unable to prevail.

■ The other prerequisite to invoking the exception to § 7421 has not been satisfied here. Mr. Colangelo claims that the liens have interfered with the "use and enjoyment" of his property, thereby causing him irreparable damage. He asserts a "right to have his property available" for satisfaction of the interests of junior lienholders. Even assuming that such a right exists, we doubt that it has been infringed by the presence of the Government's liens. As already noted, the Government does not intend to attempt an assessment or collection of those past liabilities based on illegal wiretap evidence. The appellee's property *is* available, beyond the extent of the Government's present assessment, for his remaining creditors or for other purposes. The Government has provided Mr. Colangelo a letter reflecting his updated tax liability. Although that letter apparently may not be filed along with the liens, the appellee can show it to anyone he chooses. Moreover, the Government suggests that pursuant to treasury regulations it will provide certain persons directly with the information set forth in the letter. Significantly, Mr. Colangelo does not contend that he has been denied credit or suffered similar concrete adverse consequences by reasons of these tax liens.

Because we conclude that this suit is barred by § 7421 and is not encompassed in the narrow exception to that statute, it follows that the district court erred in or-

dering the liens discharged. The order of the district court will therefore be reversed.

*REVERSED.*

COFFIN, Chief Judge, dissenting.

Because I feel that authorities do not compel and policy counsels against the court's expansive reading of the "restraining . . . collection" language of the Anti-Injunction Act, 26 U.S.C. § 7421(a), I respectfully dissent. If the court, quoting *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976), were correct that an individual can never challenge any "activities which are intended to or may culminate in the assessment or collection of taxes", then the government could adopt bizarre practices with impunity. Under the court's logic the government could file a large tax lien for an assessment based on patently illegal evidence (or no evidence at all), and the individual could not challenge the lien, at least if the government later were able to allege that some portion of the assessment, however small, could be legally supported. By extension, a court could not stop the government from garnisheeing an individual's wages, or even illegally invading someone's home in search of evidence that might culminate in the assessment or collection of a tax. The court, of course, cannot be understood as sanctioning such a result, but I see no respectable way, under its statutory reading, to foreclose it.

I cannot believe that Congress meant such a reading,[1] and I do not believe that the statutory language or the Supreme Court's interpretation of § 7421 compels it. The Court has said that the purpose of § 7421 is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for a refund.'" *Bob Jones University v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974), *quoting Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).[2] The only sensible reading of § 7421 is as a bar to suits that attempt to challenge a taxpayer's liability or the amount of that liability except through the accepted channels of the deficiency suit in the Tax Court or the suit for a refund in a district court. I would not read § 7421 to bar a suit challenging allegedly illegal IRS activities where the tax liability itself is not at issue. This reading protects legitimate government interests in the orderly assessment and collection of taxes without allowing the IRS complete freedom to take actions insulated from all review, even from the review normally provided by deficiency or refund suits.[3]

This reading is not inconsistent with existing authority. As I have said, this is not the kind of case that the Supreme Court thought § 7421 was meant to cover. *Bob Jones University, supra*, was a suit to prevent revocation of tax-exempt status. Liability was very much at issue. The broad rule that the majority draws from *United States v. Dema*, 544 F.2d at 1376 (appeal from an order restraining the IRS from issuing subpoenas or requesting records), was in turn borrowed from *Koin v. Coyle*, 402 F.2d 468 (7th Cir. 1968), a suit to prevent the IRS from using illegally seized evidence. The other kinds of cases that the Seventh Circuit evidently had in mind were suits to prevent revocation of tax-exempt

---

1. There is no legislative history of this provision. *See Bob Jones University v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).

2. "The Court has also identified 'a collateral objective of the Act—protection of the collector from litigation pending a suit for refund.'" *Bob Jones University*, 416 U.S. at 737, 94 S.Ct. at 2046, *quoting Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7–8, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

3. The legality of the lien cannot be litigated through a refund suit. This situation is, therefore, to be contrasted with that in *Bob Jones* where the Court rejected the contention that § 7421 as applied would violate the due process clause of the Fifth Amendment, saying, "This is not a case in which an aggrieved party has no access at all to judicial review. Were that true, our conclusion might well be different." *Bob Jones University*, 416 U.S. at 746, 94 S.Ct. at 2050.

status and suits to prevent police from passing information to the IRS. *See United States v. Dema*, 544 F.2d at 1381 (dissenting opinion). The tax liability itself was the real subject of dispute in these contexts. The collateral issues these cases involved could be adequately resolved in refund suits.

A dispute over liability was likewise the central issue in those cases that have held that § 7421 bars a suit challenging a tax lien.[4] *Hudson v. Crenshaw*, 224 F.2d 324 (4th Cir. 1955); *Larson v. House*, 112 F.2d 930 (5th Cir. 1940); *MBI Motor Co., Inc. v. Lotus/East, Inc.*, 399 F.Supp. 774 (E.D. Tenn.1975); *Starr v. Salemi*, 329 F.Supp. 1150 (N.D.Ill.1971); *Lynn v. Scanlon*, 234 F.Supp. 140 (E.D.N.Y.1964). *But see Calafut v. Commissioner of Internal Revenue*, 277 F.Supp. 266 (M.D.Pa.1967).[5]

The government's policy arguments are not persuasive. This situation is not analogous to a mortgage that has been partially paid off. Rather appellee has asserted that the original lien, in its entirety, was illegally imposed. Certainly if an illegal mortgage were filed, the named mortgagor could sue to have the mortgage lifted. Here, it became evident in May of 1974 when the Supreme Court decided *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), that the evidence on which the lien was based had been obtained illegally. At that point there was no legal basis to the lien, and the IRS should have withdrawn it. *Cf.* 26 U.S.C. § 6325(a) (authorizing the Commissioner to release a lien that has become legally unenforceable). Instead the IRS allowed the lien to continue in effect with no legal basis whatsoever until July of 1975 when a new assessment, far smaller than the original

one, was computed on the basis of legal evidence. At that point the IRS became lawfully entitled to a lien in the smaller amount, but it did not file that lien or reduce the existing lien. If the IRS would lose priority now were this lien to be declared illegal, that would be a problem of its own making. It would be deprived of super-priority that was illegally achieved and not deserved.

Additionally, I think the government's—and the court's—stress on administrative burden is not applicable to the position I take. I would not require the IRS to reduce a legal lien every time a partial payment is made. I would only require the IRS to release illegal liens where their illegality has been settled and where the suit challenging the lien is not an attempt to challenge collaterally the individual's tax liability. I presume that the IRS does not routinely file illegal liens.

Even if § 7421 does not cover this case, however, appellee must establish the traditional equitable prerequisites—irreparable injury and inadequate remedy at law. The district court found that they were satisfied. I agree that there is no adequate remedy at law because the lien will remain in effect at its current amount until the taxpayer is able to satisfy his liability. A suit for a refund is no comfort to an individual who is unable to raise the money owed.

It is more difficult to decide whether appellee has been injured by the government action. I agree that the lien is a restraint on free enjoyment of his property in a theoretical sense. *See Bay State Harness Horse Racing and Breeding Ass'n, Inc. v. PPG Industries, Inc.*, 365 F.Supp. 1299,

---

**4.** At least one court has held that § 7421 did not bar a challenge to a federal tax lien. *United States v. Coson*, 286 F.2d 453 (9th Cir. 1961) (suit to quiet title pursuant to 28 U.S.C. § 2410).

**5.** In *Calafut* the assessment was admitted, and the court, mentioning § 7421, held that the taxpayer could not sue for removal of a tax lien or for an order that the IRS must accept an automobile at its assessed value. The court interpreted the suit as one "to force the

Government to accept the automobile in payment at the value established in the previous tax proceedings", 277 F.Supp. at 267, and dismissed the complaint for failure to state a cause of action upon which relief could be granted. The court seems to have concluded that no relief was appropriate because the taxpayer failed to allege any illegal government action. So understanding this case, I have no quarrel with the result.

1304–05 (D.Mass.1973) (three judge court). However, as the court has pointed out, appellee made no allegation that he was unable to use his property for any specific purpose. Nor is it clear to me whether or not the IRS still intends to force the sale of real property that this suit was originally filed to stop. Therefore, I would remand this case for a hearing on the specific issue of injury to appellee that would result if the relief were denied. *See Pizzarello v. United States*, 408 F.2d 579, 587 (2d Cir. 1969).