NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0783n.06

No. 12-4532

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
AUG 23, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARY MORRIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Mary Morris sued the United States, alleging that the imposition of a federal tax lien on her property by the Internal Revenue Service (IRS) without a prior hearing violated her right to procedural due process under the Fifth Amendment to the United States Constitution. The district court ruled against her on the merits. As part of the government's response to Mrs. Morris's appeal, it argues for the first time that the suit is barred by the Tax Anti-Injunction Act, the Declaratory Judgment Act, and sovereign immunity. For the reasons set forth below, we agree with the government's belated argument.

**I. BACKGROUND**

In June 2011, Mrs. Morris received a letter from the IRS titled "Notice of Federal Tax Lien Filing  Nominee or Alter-Ego," accompanied by a "Form 668(Y), Notice of Federal Tax Lien." The letter stated that Mrs. Morris had been "identified as the nominee or alter-ego for Daniel E. Morris,"

her husband, and informed her that the IRS has "filed a Notice of Federal Tax Lien" on her property. It further explained that Mrs. Morris could appeal the filing of the notice and could request the lien's discharge by either paying the taxes due or posting a bond.

The Form 668(Y) Notice of Federal Tax Lien provided "notice that taxes (including interest and penalties) have been assessed against" Mrs. Morris as "nominee/transferee/fraudulent conveyee" of Mr. Morris. It explained that, because the taxes had remained unpaid despite a demand for payment, there had arisen "a lien in favor of the United States on all property and rights to property belonging to [Mrs. Morris] for the amount of these taxes, and additional penalties, interest, and costs that may accrue." The Notice identified the amount due as $226,600.64, arising from unpaid taxes for the years 1997, 1999, and 2000. Mrs. Morris was not given an opportunity to be heard prior to the imposition of the lien.

In December 2011, Mrs. Morris filed suit against the government in the United States District Court for the Northern District of Ohio. She alleged that the lien "has encumbered her property, has restricted her ability to use and/or transfer her property, has impaired [her] credit, and has impaired her ability to enjoy her retirement." The complaint further alleged that the imposition of the lien without a prior hearing amounted to a taking of property without due process of law, in violation of the Fifth Amendment. Mrs. Morris accordingly requested that the court declare a constitutional violation, void the lien *ab initio*, and award damages "not yet ascertainable" but estimated to be in excess of $100,000.

In its answer, the government did not contest any of the essential factual allegations of the complaint, but denied that Mrs. Morris was entitled to the relief requested. Mrs. Morris responded

by filing a motion for judgment on the pleadings. In opposing the motion, the government argued that due process is satisfied by the procedures available to a taxpayer for contesting the lien after its imposition and does not require a pre-imposition hearing.

The district court held that the availability of a quiet-title action to determine whether the nominee lien is valid constitutes a sufficient opportunity for a hearing under the Due Process Clause. It therefore denied Mrs. Morris's motion for judgment on the pleadings. After the court entered its order denying the motion, the parties jointly moved for the order to be deemed final and appealable. The court accordingly entered final judgment in favor of the government. This appeal followed.

## II. ANALYSIS

On appeal, Mrs. Morris presses the same argument that she presented below, contending that due process requires a hearing prior to the imposition of a nominee tax lien. This argument is clearly foreclosed by nearly 100 years of precedent holding that the "pay first, sue later" principle embodied in the Internal Revenue Code is constitutional. *See, e.g.*, *Dodge v. Osborn*, 240 U.S. 118, 122 (1916); *Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 595 (1931); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746-48 (1974); *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18 (1977). So if the case were before us on the merits, it would have resulted in an easy affirmance.

But the government is not content with winning on the merits, and argues for the first time on appeal that the courts are without subject-matter jurisdiction to decide this case. The government contends that the Tax Anti-Injunction Act, 26 U.S.C. § 7421, deprives the courts of jurisdiction over the portions of the complaint requesting declaratory and injunctive relief, and that sovereign immunity bars Mrs. Morris's damages claim.

As an initial matter, we note that Mrs. Morris does not question the jurisdictional nature of the Tax Anti-Injunction Act or the sovereign-immunity doctrine; nor does she contend that the government has waived these arguments by failing to raise them below. The courts have long treated both matters as jurisdictional and therefore unwaivable, in accordance with Supreme Court precedent. *See, e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (brackets, ellipsis, and internal quotation marks omitted); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5 (1962) ("The object of [the Tax Anti-Injunction Act] is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes.").

In recent years, however, there has been a growing debate about whether the term "jurisdiction" as used in Supreme Court jurisprudence invariably refers to the concept in its technical, authority-to-decide sense. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (observing that "[j]urisdiction . . . is a word of many, too many, meanings") (internal quotation marks omitted). *Compare RYO Mach., LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 470-71 (6th Cir. 2012) (holding that the Tax Anti-Injunction Act "prevents courts from asserting jurisdiction over" preemptive tax challenges), *with Hobby Lobby Stores, Inc. v. Sebelius*, ___ F.3d ___, No. 12-6294, 2013 WL 3216103, *37 (10th Cir. June 27, 2013) (en banc) (Gorsuch, J.,

concurring) ("In the end, the [Tax Anti-Injunction Act] shows none of the hallmarks of a jurisdictional restriction, and has many features that collectively indicate otherwise.").

We have no occasion in the present case to weigh in on this debate because Mrs. Morris does not contest the jurisdictional nature of the Tax Anti-Injunction Act or of sovereign immunity. Her argument, rather, is that the Tax Anti-Injunction Act does not bar her claim because she is not seeking injunctive relief, and that sovereign immunity is no barrier because the federal courts have jurisdiction over actions brought under 28 U.S.C. § 1331. We will accordingly continue to treat both the Tax Anti-Injunction Act and sovereign immunity as jurisdictional for the purpose of the present case and will reserve the question of whether they are truly so for a case in which the issue is squarely presented.

Such jurisdictional treatment does not affect the outcome of this case because, even if we were to hold that the Tax Anti-Injunction Act and sovereign immunity do not implicate the courts' subject-matter jurisdiction, we would still entertain the government's arguments. We would do so because the rule that arguments presented for the first time on appeal are waived is not absolute, but is rather a "general rule" that admits of "deviations" in "exceptional cases or particular circumstances." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (internal quotation marks omitted). For example, this court has addressed an argument raised for the first time on appeal when it was of a "purely legal" nature and its resolution "require[d] no further development of the record at the district court level." *United States v. Ellison*, 462 F.3d 557, 560-61 (6th Cir. 2006).

The argument that the Tax Anti-Injunction Act and sovereign immunity bar Mrs. Morris's suit is just such a purely legal argument, and we would address it even if we did not consider it to be of a jurisdictional nature. Mrs. Morris's suit is in fact barred for the reasons discussed below, so whether that bar is characterized as jurisdictional makes no practical difference for the case's disposition.

With this prologue out of the way, we now proceed to decide whether Mrs. Morris's suit is barred by the Tax Anti-Injunction Act and sovereign immunity. The Tax Anti-Injunction Act provides that, except for certain lawsuits authorized elsewhere in the Internal Revenue Code, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

In *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), the Supreme Court held that "[t]he object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes," and it rejected the argument that suits for an injunction should be permitted where the legal remedy is inadequate. 370 U.S. at 5-6. The Court explained that this policy is justified by the government's need to promptly collect taxes. *Id.* at 7 ("The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue."). Nevertheless, the Supreme Court left open the

possibility of injunctive relief in cases where "it is clear that under no circumstances could the Government ultimately prevail" and "equity jurisdiction otherwise exists." *Id.*

The Supreme Court reaffirmed *Williams Packing*'s expansive interpretation of the Tax Anti-Injunction Act in *Bob Jones University v. Simon*, 416 U.S. 725 (1974). It reiterated that the space left open for injunctive-relief suits is narrow, requiring "first, irreparable injury, . . . and second, certainty of success on the merits." 416 U.S. at 737. The Court also rejected the claim that the procedure mandated by the Tax Anti-Injunction Act that a taxpayer must pay first and sue later violates the Due Process Clause. It commented that "[t]his is not a case in which an aggrieved party has no access at all to judicial review," noting that the opportunities to exhaust the IRS's internal refund procedures and then sue for a refund "offer petitioner a full, albeit delayed, opportunity to litigate the legality of the Service's" tax-collection efforts. *Id.* at 746. The Court acknowledged that the "pay first, sue later" principle presented "serious problems of delay," but held that "the problems presented do not rise to the level of constitutional infirmities, in light of the powerful governmental interests in protecting the administration of the tax system from premature judicial interference and of the opportunities for review that are available." *Id.* at 747-48 (internal citations omitted).

In the present case, the government relies on *Bob Jones University* to argue that the Tax Anti-Injunction Act bars Mrs. Morris's request for declaratory and injunctive relief. Mrs. Morris, in response, distinguishes *Bob Jones University* on the ground that the relief requested in that case was the enjoinment of *future* harm, whereas her complaint requests redress for past harm:

> Mrs. Morris did not bring a preemptive lawsuit seeking to restrain the government
> from doing anything. The difference here is between Mrs. Morris suing to enjoin the

United States from filing the Nominee or Alter-Ego tax lien and bringing a suit after the United States filed its lien challenging the constitutionality of that filing. Mrs. Morris did not and does not seek injunctive relief. Rather, she seeks redress for a wrong already committed. The lien is filed. The damage is done. Tax Anti-Injunction Act, therefore, does not bar this suit.

This argument is not without surface appeal. And it is leant strength by the language of the Notice of Federal Tax Lien, which states that taxes "have been assessed" against Mrs. Morris. If the taxes have already been assessed and the lien imposed, one might suppose, then the relief sought is not truly an injunction but rather "redress for a wrong already committed."

The Tax Anti-Injunction Act, however, is not limited to prohibiting actions that restrain the "assessment" of taxes; by its terms, the Act also speaks to tax "collection." *See* 26 U.S.C. § 7421(a). In the present case, there is no dispute that the taxes allegedly due have not yet been collected. Nor can there be any dispute that the imposition of the lien furthers the government's efforts to collect such taxes. So the purpose of Mrs. Morris's requested relief  to void the lien *ab initio*  is manifestly to "restrain[] the . . . collection of [a] tax," 26 U.S.C. § 7421(a), which is exactly what the Tax Anti-Injunction Act prohibits.

Indeed, *Williams Packing* was clear that "in general, the Act prohibits suits for injunctions barring the collection of federal taxes when the collecting officers *have made the assessment* and claim that it is valid." 370 U.S. at 8 (emphasis added). And other courts of appeals have interpreted the Tax Anti-Injunction Act as "applicable not only to the assessment or collection itself, but to activities which are intended to or may culminate in the assessment or collection of taxes." *See, e.g.*, *Colangelo v. United States*, 575 F.2d 994, 996 (1st Cir. 1978) (ellipsis omitted) (quoting *United*

*States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976)); *accord Smith v. Rich*, 667 F.2d 1228, 1230 (5th Cir. 1982).

To further illustrate this point, suppose that the property encumbered by the lien was about to be sold in order to raise money to pay the assessed taxes. *See* 26 U.S.C. § 6325(b)(3) (providing for the discharge of the lien where the encumbered property is sold and the proceeds are held subject to the government's claims). If a suit were then brought to enjoin the sale, there would be no doubt that the suit was directed at restraining *future* tax-collection efforts. To hold that such a suit which would be brought later in time and later in the chain of the government's collection efforts than the present suit is barred by the Tax Anti-Injunction Act, but that the present suit is not so barred because it seeks "redress for a wrong already committed," would be illogical.

Mrs. Morris's purported distinction between a true injunction and a "redress" is therefore a false dichotomy. Under both the plain language and the clear policy of the Tax Anti-Injunction Act, the fact that the lien has already been imposed does not render the Act inapplicable, just as the fact that the taxes had already been assessed (but not yet collected) did not render the Act inapplicable in *Williams Packing*.

The foregoing conclusion is bolstered by the decisions applying the Tax Anti-Injunction Act to suits that, like the present one, have sought the removal of a tax lien. The cases decided after *Bob Jones University* appear to be unanimous in holding that a suit seeking the removal of a tax lien is barred by the Tax Anti-Injunction Act. *See, e.g.*, *Overton v. United States*, 925 F.2d 1282 (10th Cir. 1991); *Colangelo*, 575 F.2d 994; *Krieg v. Mills*, 117 F. Supp. 2d 964 (N.D. Cal. 2000), *aff'd*, 8 F.

-9-

App'x 663 (9th Cir. 2001); *Ross v. United States*, 861 F. Supp. 406 (E.D.N.C. 1994); *MBI Motor Co., Inc. v. Lotus/East, Inc.*, 399 F. Supp. 774 (E.D. Tenn. 1975).

The decision in *Harrell v. United States*, 13 F.3d 232 (7th Cir. 1993), is not to the contrary. In that case, the Seventh Circuit held that "[t]he anti-injunction act . . . bars a suit challenging the collection or assessment of taxes, but not a suit to remove a lien without questioning the entitlement of the government to collect the taxes in some other way." 13 F.3d at 234. The pertinent distinction, noted the court, is between a suit challenging the plaintiff's tax liability, which is barred by the Tax Anti-Injunction Act, and one challenging "merely the means for enforcing that liability," which is not barred. *Id.* at 235.

That distinction, even assuming it is a valid one, does not make any difference in the present case. Mrs. Morris is not simply challenging the lien as an improper method of tax collection while conceding that the government can go about collecting the assessed taxes from her in some other way. Rather, she is clearly challenging her very tax liability; she says that the property subject to the lien is legally and equitably hers, not her husband's, so it should not have been encumbered without a prior hearing in which she could contest the IRS's assertion that she was merely her husband's nominee. *Harrell* is therefore of no avail to Mrs. Morris.

Nor can Mrs. Morris get around the Tax Anti-Injunction Act through the *Williams Packing* exception for cases where "under no circumstances could the Government ultimately prevail," 370 U.S. at 7. This exception does not apply because Mrs. Morris's constitutional claim, far from exhibiting a "certainty of success on the merits," *Bob Jones Univ.*, 416 U.S. at 737, is virtually guaranteed to fail. As noted, the Supreme Court rejected a similar constitutional challenge in *Bob*

-10-

*Jones University*, *id.* at 746-48, and has done so many other times before and since. *See, e.g.*, *Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 595 (1931); *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18 (1977).

Finally, Mrs. Morris cannot find an escape hatch for her declarative and injunctive requests in the Declaratory Judgment Act, 28 U.S.C. § 2201. That statute authorizes the courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* at § 2201(a). But the statutory authorization is, by its own terms, subject to an important carveout "except with respect to Federal taxes." *Id.* Because "the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act," *Bob Jones Univ.*, 416 U.S. at 732 n.7, Mrs. Morris cannot use the former statute to get around the latter.

Mrs. Morris's requests for declaratory and injunctive relief are therefore barred by the Tax Anti-Injunction Act. This leaves the complaint's request for monetary damages, which the government contends is barred by sovereign immunity. "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (brackets, ellipsis, and internal quotation marks omitted). The burden is on the plaintiff to establish that the government has waived sovereign immunity. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). "If [the plaintiff] cannot identify a waiver, the claim must be dismissed on jurisdictional grounds." *Id.*

The only purported waiver of sovereign immunity identified by Mrs. Morris is 28 U.S.C. § 1331, which is the general statute conferring federal-question jurisdiction on the district courts. But "jurisdictional statutes, such as the statute giving federal district courts original jurisdiction of civil actions arising under Constitution, laws, or treaties of United States, do not operate as waivers of sovereign immunity." *Munaco v. United States*, 522 F.3d 651, 653 n.3 (6th Cir. 2008); *accord Mitchell*, 445 U.S. at 538. Mrs. Morris has therefore failed to carry her burden of establishing a waiver of sovereign immunity.

In sum, Mrs. Morris's present suit is barred by the Tax Anti-Injunction Act, the Declaratory Judgment Act, and sovereign immunity. This does not mean, of course, that Mrs. Morris is perpetually prohibited from challenging the taxes assessed against her. There are innumerable decisions on the books dealing with challenges to various taxes. Mrs. Morris is likewise free to challenge the assessed taxes, assuming that she meets any other applicable requirements, after she pays them. Or she can contest the lien by filing a quiet-title action to show that the encumbered property is truly hers, not her husband's. *See* 28 U.S.C. § 2410 (permitting suits against the United States "to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien," and prescribing the proper procedure for such suits). But she cannot bring the present challenge at this juncture.

### III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and remand the case with instructions to **DISMISS** it for want of subject-matter jurisdiction.