# United States Court of Appeals
## For the First Circuit

No. 21-1316

JAMES HARPER,

Plaintiff, Appellant,

v.

CHARLES P. RETTIG, in his official capacity as Commissioner of
the Internal Revenue Service; INTERNAL REVENUE SERVICE; JOHN DOE
IRS AGENTS 1-10,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Kayatta, Lipez, and Gelpí,
Circuit Judges.

Richard Abbott Samp, with whom Aditya Dynar, Caleb
Kruckenberg, and New Civil Liberties Alliance were on brief, for
appellant.
Kathleen E. Lyon, with whom John J. Farley, Acting United
States Attorney, David A. Hubbert, Acting Assistant Attorney
General, Francesca Ugolini, and Jennifer M. Rubin were on brief,
for appellees.

August 18, 2022

**LIPEZ**, **Circuit Judge**.  In August 2019, the Internal Revenue Service ("IRS") notified appellant James Harper that it possessed information about his virtual currency accounts and transactions and warned him that he could face civil or criminal enforcement action for inaccurately reporting such transactions. Believing that the IRS had acquired his personal financial records from a digital currency exchange via a third-party summons, see 26 U.S.C. §§ 7602 and 7609, appellant sued the IRS and its agents for injunctive relief and monetary damages, alleging that the third-party summons process violated his constitutional and statutory rights.  The district court concluded that it lacked subject matter jurisdiction over appellant's suit under the Anti-Injunction Act of the Internal Revenue Code, 26 U.S.C. § 7421,[1] and dismissed the complaint.[2]  We vacate the judgment of the district court.

## I.

### A. Factual Background

We draw the relevant facts from appellant's complaint. In 2013, appellant opened an account with Coinbase, which he describes as "a non-party digital currency exchange that

---

[1] The Anti-Injunction Act of the Internal Revenue Code is distinct from the better-known Anti-Injunction Act, codified at 28 U.S.C. § 2283, which generally prohibits the federal courts from enjoining proceedings in state courts.  See 28 U.S.C. 2283.

[2] The district court also dismissed appellant's claims for money damages under the doctrine of sovereign immunity.  Appellant does not appeal the dismissal of those claims.

facilitates transactions in virtual currencies," including bitcoin. Appellant deposited bitcoin in his Coinbase account in 2013 and 2014. Appellant began liquidating his Coinbase holdings of bitcoin in 2015, ultimately transferring what remained in his account to a hardware wallet[3] such that, by early 2016, he no longer held bitcoin via Coinbase. Appellant declared and reported income from his Coinbase transactions on his 2013, 2014, 2015, and 2016 income tax returns. Beginning in 2016, appellant and his wife sold bitcoin through the digital exchanges Abra and Uphold. Appellant declared and paid taxes on the capital gains on his bitcoin holdings in tax years 2016, 2017, 2018, and 2019.

In 2016, the IRS filed an ex parte "John Doe" administrative summons on Coinbase in the U.S. District Court for the Northern District of California.[4]  See United States v.

---

[3] A hardware wallet is a "secure offline" version of a virtual currency wallet that "can be used securely and interactively." Virtual Currency Storage, IRM 5.1.18.20.2 (July 17, 2019). Hardware wallets "are immune to computer viruses, the keys stored cannot be transferred out of the device in plaintext (unencrypted), and in most instances their software is not open source." Id. In contrast, "[a] software wallet is connected to the internet, downloaded, and installed on a computer or mobile device and stores private keys on the device's hard drive." Id.

[4] Section 7602 of the Internal Revenue Code authorizes the IRS to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." 26 U.S.C. § 7602(a). A "John Doe" summons is a third-party summons issued "where the IRS does

- 3 -

Coinbase, Inc., No. 17-cv-1431-JSC, 2017 WL 5890052, at *1 (N.D. Cal. Nov. 28, 2017). Under § 7609 of the Internal Revenue Code, a "John Doe" summons can issue only after a court proceeding in which the IRS establishes that

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
> (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f). The initial summons sought nine categories of "information regarding United States persons who at any time during the period January 1, 2013 through December 31, 2015 conducted transactions in a convertible virtual currency as defined in IRS Notice 2014-21." Coinbase, 2017 WL 5890052, at *1.

After Coinbase opposed the initial summons, the IRS narrowed its scope. The narrowed summons sought the following information, with respect to accounts "with at least the equivalent of $20,000 in any one transaction type . . . in any one year during the 2013-2015 period":

> Request 1: [Account] registration records for each [account] owned or controlled by the user

___

not know the identity of the taxpayer[s] under investigation." Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 316 (1985).

- 4 -

during the period stated above limited to name, address, tax identification number, date of birth, account opening records, copies of passport or driver's license, all wallet addresses, and all public keys for all [accounts].

Request 2: Records of Know-Your-Customer diligence.

Request 3: Agreements or instructions granting a third-party access, control, or transaction approval authority.

Request 4: All records of [account] activity including transaction logs or other records identifying the date, amount, and type of transaction . . ., the post transaction balance, the names or other identifiers of counterparties to the transaction; requests or instructions to send or receive bitcoin; and, where counterparties transact through their own Coinbase [accounts], all available information identifying the users of such accounts and their contact information.

Request 5: Correspondence between Coinbase and the user or any third party with access to the [account] pertaining to the [account] opening, closing, or transaction activity.

Request 6: All periodic statements of account or invoices (or the equivalent).

Coinbase, 2017 WL 5890052, at *2. Coinbase and John Doe 4, who was permitted to intervene, opposed the narrowed summons. Id. Although appellant did not intervene in the litigation, he alleges that he "participate[d] as an expert in an amicus filing."[5] After

_____

[5] "Jim Harper" is listed as an attorney in the signature block of the amicus brief filed by the Competitive Enterprise Institute. See Brief of Amicus Curiae Competitive Enterprise Institute in

hearing argument, the district court permitted the government to enforce the summons with respect to Requests 1, 4, and 6.  Id. at *7.[6]

In August 2019, appellant received a letter from the IRS notifying him that the agency "ha[d] information that you have or had one or more accounts containing virtual currency but may not have properly reported your transactions involving virtual currency."  The letter warned him that he could face civil or criminal enforcement action if he failed to accurately report his virtual currency transactions.

**B. Procedural History**

In July 2020, appellant filed a complaint against the IRS, Commissioner Charles P. Rettig in his official capacity (collectively, "the IRS"), and ten unidentified IRS agents.  The amended complaint alleges that the IRS and its agents violated the Fourth and Fifth Amendments, as well as 26 U.S.C. § 7609(f), by acquiring appellant's personal financial information from Abra and Coinbase through the third-party summons process.[7]  Specifically,

_____

Opposition to Petition to Enforce Internal Revenue Service Summons at 15, Coinbase, 2017 WL 5890052, ECF No. 50-2.

[6] The district court further found that Coinbase and John Doe 4 had failed to show that the government engaged in abuse of process or to demonstrate their entitlement to an evidentiary hearing on whether the government acted in bad faith.  Coinbase, 2017 WL 5890052, at *8.

[7] Appellant suggests that the "IRS probably obtained [his] private information either from an unlawful John Doe subpoena

- 6 -

appellant contends that he had an ownership interest, as well as a reasonable and subjective expectation of privacy, in the personal financial information Abra and Coinbase maintained about his accounts. He contends that the IRS's acquisition of that information from Coinbase and Abra violated the Fourth Amendment because the IRS lacked particularized suspicion that he had violated any laws and the IRS did not obtain a judicial warrant or subpoena prior to accessing his information. Appellant also alleges that this "unlawful seizure" violated his rights under the Fifth Amendment because of the IRS's failure to provide direct notice of, and an opportunity to challenge, the third-party summons. Appellant initially sought damages and declaratory and injunctive relief, including an order requiring the IRS to expunge his financial information from its records.

The district court granted the IRS's motion to dismiss appellant's request for money damages as to the IRS and the Commissioner based on sovereign immunity. The court also dismissed appellant's money-damages claims as to the individual IRS agents under Bivens[8] for failure to state a claim, finding that appellant's Fourth and Fifth Amendment claims extended Bivens to

---

issued to Coinbase or without any subpoena issued to Abra or a comparable exchange."

[8] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

a new context and that special factors counseled against such an extension. Appellant does not appeal either of those decisions. Finally, the district court dismissed his claims for declaratory and injunctive relief for lack of subject matter jurisdiction, finding that the Anti-Injunction Act of the Internal Revenue Code, 26 U.S.C. § 7421, represents an exception to the Administrative Procedure Act's ("APA") waiver of sovereign immunity, 5 U.S.C. § 702. Appellant timely appealed.

## II.

### A. Standard of Review

We review de novo dismissals for lack of subject matter jurisdiction. Lyman v. Baker, 954 F.3d 351, 359 (1st Cir. 2020). Although dismissals under Rules 12(b)(1) and 12(b)(6) are "conceptually distinct, . . . the same basic principles apply in both situations." Id. (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016)). Ignoring "statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," we take the complaint's non-conclusory, non-speculative facts as true and draw all reasonable inferences in the plaintiff's favor to determine whether the complaint indicates that the court has subject matter jurisdiction. Id. at 360 (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)). We may also

consider information attached to or incorporated into the complaint and facts susceptible to judicial notice. Id.

**B. Discussion**

The doctrine of sovereign immunity prevents the United States from being sued without its consent. United States v. Dalm, 494 U.S. 596, 608 (1990); Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005). "[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." Dalm, 494 U.S. at 608 (quoting United States v. Testan, 424 U.S. 392, 399 (1976)). A waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed,'" and, "[e]ven then, the waiver must be strictly construed." Muirhead, 427 F.3d at 17 (quoting United States v. King, 395 U.S. 1, 4 (1969)).

Appellant identifies the waiver provision of the APA, 5 U.S.C. § 702, as the basis for subject matter jurisdiction. Section 702 of the APA provides, in part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphases added).  Appellant's suit, which seeks injunctive and declaratory relief from IRS action taken pursuant to its statutory authority under 26 U.S.C. §§ 7602 and 7609, appears to fit comfortably within the plain language of this waiver.[9]  But § 702 also includes two limitations on the United States' waiver of sovereign immunity: it expressly leaves in place "other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground," and it withholds "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  Id.; see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 215 (2012) (describing the second exception).

---

[9] On appeal, appellant also invokes the exception to sovereign immunity recognized in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949).  As we have previously explained, Larson described two situations in which a government officer is not entitled to sovereign immunity: (1) when the officer acts beyond his statutory authority; and (2) when "the statute that confers the power to act is unconstitutional or if the officer exercises that power in an unconstitutional manner."  Muirhead, 427 F.3d at 19.  "[A] suit, although nominally aimed at an official, will be considered one against the sovereign" -- and therefore not within the Larson exception -- "'if the judgment sought would . . . interfere with the public administration, or if the effect of the judgment would be to restrain the [g]overnment from acting, or to compel it to act.'"  Id. at 18 (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)).  Appellant's suit does not fall within the Larson exception because the remedies it seeks -- an order directing the IRS to expunge its records of appellant's personal financial information and a declaration that the process through which the IRS acquired this information was unlawful -- are clearly aimed at the IRS itself.

The IRS argues -- and the district court agreed -- that the Anti-Injunction Act of the Internal Revenue Code, 26 U.S.C. § 7421, is a statutory exception to the United States' waiver of sovereign immunity in § 702.[10] The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).[11] Relying on Colangelo v. United States, 575 F.2d 994, 996 (1st Cir. 1978), the IRS contends that the Anti-Injunction Act bars appellant's suit because it seeks to restrain "activities which are intended to or may culminate in the assessment or collection of taxes."

The Supreme Court recently clarified that the Anti-Injunction Act "is 'not keyed to all activities that may improve a [s]tate's ability to assess and collect taxes.' It is instead 'keyed to the acts of assessment [and] collection themselves.'" CIC Servs., LLC v. IRS, 141 S. Ct. 1582, 1589 (2021) (quoting Direct Mktg. Ass'n v. Brohl, 575 U.S. 1, 11-12 (2015)).[12] Noting

---

[10] The IRS also argues that the Declaratory Judgment Act, 28 U.S.C. § 2201, precludes jurisdiction over appellant's suit. Appellant and the IRS agree, however, that the Anti-Injunction Act and the Declaratory Judgment Act are interpreted in the same way. Consequently, we refer only to the Anti-Injunction Act.

[11] The statute contains several exceptions not relevant here. See 26 U.S.C. § 7421(a).

[12] Direct Marketing involved the Tax Injunction Act, which "was modeled on the Anti-Injunction Act" and contains nearly

- 11 -

that "'[i]nformation gathering' . . . is 'a phase of tax administration procedure that occurs before assessment [or] collection,'" the Court explained that the Anti-Injunction Act would not bar a lawsuit challenging ordinary reporting requirements, even if those requirements "facilitate [the] collection of taxes" by identifying taxpayers who owe tax, because reporting requirements are part of the information-gathering phase of tax administration. Id. (emphasis added) (quoting Direct Mktg., 575 U.S. at 8, 12); see also id. at 1588-89 ("A reporting requirement is not a tax; and a suit brought to set aside such a rule is not one to enjoin a tax's assessment or collection. That is so even if the reporting rule will help the IRS bring in future tax revenue . . . .").

Appellant challenges the IRS's summons authority under 26 U.S.C. §§ 7602 and 7609. As previously noted, § 7602 authorizes the IRS to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any

_____

identical language but applies to challenges to state tax laws. 575 U.S. at 8. The Court "assume[d] that words used in both Acts are generally used in the same way," id., and subsequently adopted Direct Marketing's interpretation of "assessment" and "collection" activities as applied to the Anti-Injunction Act in CIC Services, see 141 S. Ct. at 1588-89 & n.1.

transeree . . ., or collecting any such liability." 26 U.S.C. §

7602(a). Pursuant to this authority, the IRS may issue a summons:

> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
>
> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

Id. These activities clearly fall within the category of information gathering, which the Supreme Court has distinguished from acts of assessment and collection. Compare Direct Mktg., 575 U.S. at 8 (identifying the "reporting of information used to determine tax liability, including reports by third parties who do not owe the tax" as part of the "information gathering . . . phase of tax administration procedure that occurs before assessment . . . or collection" (citation omitted)), with id. at 9 (defining "[a]ssessment" as "the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing

authority"), and id. at 10 (suggesting that "collection" begins after assessment when the tax collector "giv[es] notice to each person liable to pay any taxes . . . stating the amount of such taxes and demanding payment thereof").  Because appellant's suit challenges the IRS's information-gathering authority and the Anti-Injunction Act limits our jurisdiction only in suits involving assessment and collection, the Act is not an applicable exception to the United States' waiver of sovereign immunity in 5 U.S.C. § 702.  See CIC Servs., 141 S. Ct. at 1588-89; Direct Mktg., 575 U.S. at 14 ("[A] suit cannot be understood to 'restrain' the 'assessment . . . or collection' of a [] tax if it merely inhibits those activities.").

Despite the seemingly clear demarcation between information gathering, on the one hand, and assessment and collection, on the other, the IRS insists that the purpose of appellant's suit is restraining the assessment or collection of taxes, thereby bringing it within the scope of the Anti-Injunction Act.  Invoking language from CIC Services, the IRS contends that "'the substance of the suit' is directed at the alleged harm of having the IRS retain and use information about [appellant]'s virtual currency transactions for use in determining [his] compliance with his income tax obligations," and "[t]he 'relief requested' is the expungement of information that would allow the IRS to do so."  (Emphasis added.)  See CIC Servs., 141 S. Ct. at

- 14 -

1589 ("In considering a 'suit['s] purpose,' [courts] inquire not into a taxpayer's subjective motive, but into the action's objective aim -- essentially, the relief the suit requests."). The IRS also cites out-of-circuit case law that predates both Direct Marketing and CIC Services to suggest that "suits challenging the IRS's investigatory processes leading up to assessment and collection are barred."

As the Court observed in CIC Services, however, "[t]he Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation -- or stated in the Act's language, when that injunction runs against the 'collection or assessment of [a] tax.'" Id. at 1590. Here, the target of the requested injunction is the IRS's continued retention of appellant's personal financial information, which appellant alleges the IRS acquired in violation of the Constitution and 26 U.S.C. § 7609(f).[13] Contrary to the IRS's suggestion that appellant's suit is "a 'preemptive' suit to foreclose tax liability" (which would be barred by the Anti-Injunction Act), this suit, like the suit at issue in CIC Services, "falls outside the Anti-Injunction Act because the injunction it requests does not run against a tax at all." Id. at 1593. Rather, "[t]he suit contests, and seeks

---

[13] The IRS itself appears to recognize this reality, as it describes the goal of the suit as seeking to "order[] the IRS to destroy information obtained pursuant to an enforcement order as part of a legitimate investigation."

relief from, a separate legal" wrong -- the allegedly unlawful acquisition and retention of appellant's financial records.  Id. Like the plaintiff in CIC Services, appellant "stands nowhere near the cusp of tax liability," id. at 1591, and "the dispute is [not] about a tax rule," where "the sole recourse" in light of the Anti-Injunction Act "is to pay the tax and seek a refund," id. at 1593. Consequently, the Anti-Injunction Act does not bar appellant's suit and the district court's judgment of dismissal under Federal Rule of Civil Procedure 12(b)(1) must be vacated.

## III.

The IRS urges that we should nevertheless affirm the dismissal of the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Although the IRS made this argument below and both sides fully briefed the issue, the district court declined to evaluate the government's Rule 12(b)(6) arguments after concluding that dismissal was required under Rule 12(b)(1). We therefore vacate the judgment of dismissal for lack of subject matter jurisdiction and remand to the district court to consider, in the first instance, whether appellant has stated a claim on which relief can be granted.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 141 (1st Cir. 2015).

So ordered.